IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

In re:

THE BRISKET HOUSE, INC.,                           Case No. 11-12584-s11
a New Mexico corporation,                          (Bankruptcy Court)

                    Debtor.

U.S. BANK NATIONAL ASSOCIATION

                    Plaintiff,

vs.

THE BRISKET HOUSE, INC. (1988),                    No. CIV 11-679 MCA/GBW
THE BRISKET HOUSE, INC. (2011),                    Adversary No. 11-01124s
and HOWARD AND JULIE ROGERS
individually,

                    Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Plaintiff U.S. Bank National Association's

(hereinafter "U.S. Bank") *Motion to Withdraw the Reference Pursuant to 28 U.S.C. §§ 157(d)*

*and Certify to the New Mexico Supreme Court.* [D.N.M. 11-cv-679 Doc. 1[1]]  U.S. Bank seeks

withdrawal of reference as to adversary proceeding number 11-01124-s which U.S. Bank

initiated in the United States Bankruptcy Court for the District of New Mexico (hereinafter the

---

[1] Because this matter requires consideration of varying documents from multiple dockets
from different courts, the Court's record citations include citations to the originating court and
the case number.

1

"Bankruptcy Court"). [Bankr. D.N.M. 11-01124s Doc. 1] The adversary proceeding stems from a bankruptcy petition filed in the Bankruptcy Court by Defendant, The Brisket House, Inc. a New Mexico Corporation.[2] [Bankr. D.N.M. 11-12584-s11 Doc. 1] The issue presented by the pending motion is whether this Court should withdraw the reference of the adversary proceeding from the Bankruptcy Court and certify certain purportedly unsettled and unspecified issues of New Mexico law to the New Mexico Supreme Court. [D.N.M. 11-cv-679 Doc. 1 at 1-2] The Court concludes that U.S. Bank has failed to demonstrate that discretionary withdrawal is warranted or that certification is appropriate. The motion to withdraw will be denied.

## I. BACKGROUND

At the outset, the Court notes that the parties provided only a very brief summary of the complex historical facts and procedural history of this case. What was submitted was insufficient to adequately inform the Court of the essential facts and legal matters at issue here, and to place the matter into proper context. As such, the Court independently reviewed numerous documents from the dockets associated with the adversary proceeding and the bankruptcy filing. It was only after this review that the Court came to a full awareness of the facts and issues. What follows is a summary of the Court's understanding of the facts giving rise to U.S. Bank's motion to withdraw the reference.

In July of 2000, The Brisket House, Inc., a New Mexico corporation formed in 1988, obtained a loan in the form of a promissory note from U.S. Bank totaling $573,000. [Bankr.

---

[2] Although the caption in this case lists three defendants, The Brisket House, Inc. maintains that there is no distinction between the 1988 and 2011 iterations of The Brisket House, Inc. [11-cv-679 Doc. 2 at 3] and filed one response. Howard and Julie Rogers did not file a response. As such, and for the purposes of this order, the Court shall refer to the three named Defendants in the singular.

D.N.M. 11-01124-s Doc. 1 at 4, 6 ¶ 14] Howard and Julie Rogers were the sole stockholders, officers, and directors of The Brisket House, Inc. [Id. at 5] As collateral for the loan, U.S. Bank obtained deeds of trust mortgages on three parcels of property in Albuquerque owned by The Brisket House, Inc. and upon which The Brisket House, Inc. operated restaurants and catering services. [Id. at 4] Those parcels are identified as 6421 Gibson Boulevard SE, 6501 Gibson Boulevard SE, and 2500 Broadway Boulevard SE. [Id. at 6-7]

On August 14, 2000, U.S. Bank filed varying financing statements with the New Mexico Secretary of State listing the Brisket House, Inc. as a debtor and identifying the collateral property. [Id. at 4 & 6-8] In doing so, U.S. Bank claims to have "perfected its lien . . . on such collateral." [Id.] According to U.S. Bank, the loan documents purportedly prohibit the transfer or the assignment of the collateral without the consent of U.S. Bank [Id. at 5] and the deeds of trust provide that U.S. Bank holds a security interest in "the fixtures, rents and personal property and other collateral as defined by the Deeds of Trust." [Id. at 8]

U.S. Bank indicates that, in 2002, The Brisket House, Inc. filed for Chapter 11 Bankruptcy. [Id. at 10] Defendant does not contest this point. [D.N.M. 11-cv-679 Doc. 2 at 3]

On January 10, 2005, The Brisket House, Inc.'s corporate charter was revoked by the New Mexico Public Regulation Commission and a certificate of revocation was issued. [Bankr. D.N.M. 11-01124-s Doc. 1 at 5 ¶ 12] The Brisket House, Inc. had until January 10, 2007 to reinstate, but failed to do so. [Id. at 5-6] These facts are also uncontested [D.N.M. 11-cv-679 Doc. 2 at 2-3] and Defendant explains that the Rogers errantly failed to file corporate reports, were unaware that The Brisket House, Inc.'s corporate charter had been revoked in 2005, and did not learn of the revocation until after the period of reinstatement had passed. [Id. Doc. 2 at 3]

3

U.S. Bank asserts that, as of March 2, 2011, The Brisket House, Inc. was in monetary default on the July 2000 loan. [Bankr. D.N.M. 11-01124-s Doc. 1 at 9]  According to U.S. Bank, the principal balance due as of March 2, 2011 was $473,869.22 plus accrued interest and other costs and fees. [Id. at 9]  U.S. Bank further claims that The Brisket House, Inc. was also in non-monetary default as of March, 2011 for its "failure to pay taxes when due, becoming insolvent, filing a Chapter 11 bankruptcy in 2002, and has been subject to an adverse change in its financial condition, which materially affect the 1988 Corporation's ability to repay the note." [Id. at 9-10]

On March 28, 2011, the Rogers filed articles of incorporation for The Brisket House, Inc., a corporation with an identical name as the former company they directed.  [Bankr. D.N.M. 11-12584-s11 Doc. 15 at 2 ¶ 10]  Defendant explains that the Rogers had continued to operate the former The Brisket House, Inc. after its corporate charter was revoked "as though the corporation was in full effect" and filed new articles of incorporation in 2011 after learning of the revocation "with the intention of reviving the original company." [D.N.M. 11-cv-679 Doc. 2 at 3]  U.S. Bank counters that the Rogers formed the 2011 corporation "to fraudulently conceal the revocation of the 1988 Corporation's charter, the breach of the loan documents, and th [sic.] failure to comply with the [New Mexico] Business Corporation Act." [Bankr. D.N.M. 11-01124-s Doc. 1 at 10 ¶ 34]

On March 31, 2011, U.S. Bank filed a foreclosure action in the state courts of New Mexico to foreclose on the collateral parcels.  [Id. at 2, 10 ¶ 31&32]  That action was brought in the Bernalillo County District Court and was captioned *U.S. Bank National Association v. The Brisket House, Inc.* [Id.]  U.S. Bank asserts that the foreclosure action it filed concerns The Brisket House, Inc. incorporated in 1988 and does not concern The Brisket House, Inc.

4

incorporated in 2011.  [Id. at 2-3]  The latter of these two corporations, U.S. Bank claims, is not

a defendant to the foreclosure action.  [Id.]  Defendant takes the position that the two

corporations are one entity and that there is no "distinction" between the 1988 and 2011 Brisket

House corporations.  [D.N.M. 11-cv-679 Doc. 2 at 3]

On May 20, 2011—three weeks after U.S. Bank initiated its foreclosure action—the

Rogers recorded quitclaim deeds accompanied by corporate minutes, resolutions, and affidavits

purportedly executing the transfer of the three parcels from The Brisket House, Inc. incorporated

in 1988 to The Brisket House, Inc. incorporated in 2011.  [Bankr. D.N.M. 11-01124-s Doc. 1 at

10 ¶ 35; D.N.M. 11-cv-679 Doc. 2 at 3]  U.S. Bank claims that this action was "in violation of

New Mexico Law," and, citing *In re Will of Coe*, 113 N.M. 355, 826 P.2d 576 (Ct.App. 1992),

claims that "[r]eal estate owned by a dissolved corporation does not revert to its shareholders."

[Bankr. D.N.M. 11-01124-s Doc. 1 at 10-11]  Defendant responds that the Rogers were merely

attempting to legitimately transfer any interest they may personally have had in the three parcels

to the newly incorporated The Brisket House, Inc.  [D.N.M. 11-cv-679 Doc. 2 at 3]

Only a few weeks later, on June 1, 2011, the newly incorporated The Brisket House, Inc.

filed a Chapter 11 bankruptcy in the Bankruptcy Court.  [Bankr. D.N.M. 11-12584-s11 Doc. 1]

Defendant asserts that the bankruptcy petition "was filed under the name 'The Brisket House,

Inc., a New Mexico Corporation,' and listed the current EIN and also a former dba as 'The

Brisket House, Inc., a New Mexico Corporation' under the prior EIN."  [D.N.M. 11-cv-679 Doc.

2 at 3]  In its 2011 bankruptcy filing, The Brisket House, Inc. listed the three parcels as real

property and claimed that the parcels are held in fee simple.  [Bankr. D.N.M. 11-12584-s11 Doc.

1 at 8]  After filing for bankruptcy, The Brisket House, Inc. filed a notice of bankruptcy in the

state court foreclosure action initiated by U.S. Bank claiming entitlement to an automatic stay of those proceedings pursuant to 11 U.S.C. § 362 (2010).[3]  [Bankr. D.N.M. 11-01124-s Doc. 1 at 11 ¶ 38]

On July 29, 2011, U.S. Bank initiated the adversary proceeding in the Bankruptcy Court by filing a complaint.[4]  [Id. at 1]  In its complaint, U.S. Bank sought a declaratory judgment pursuant to applicable New Mexico state law that "the real estate and personal property owned by the 1988 corporation is not automatically transferred to its shareholders pro rata and that the assets must be liquidated and paid to the 1988 corporations creditors in accordance with the New Mexico Business Corporation Act."  [Id. at 1-2]  U.S. Bank also sought

> a declaration that the shareholders do not have the authority to transfer the real estate titled in the name of the 1988 Corporation to a new corporation, namely, the Brisket House Inc., a New Mexico Corporation formed in 2011 ("the 2011 Corporation"), in the absence of compliance with the Business Corporation Act, and declaring that the 2011 Corporation formed by the shareholders of the 1988 Corporation using the same name is not the successor-in-interest to the 1988 Corporation, does not constitute a revival of the 1988 Corporation, and declaring that the 2011 Corporation does not hold any right, title or interest in and to the assets of the 1988 Corporation.

[Id. at 2]  The complaint lists four "counts" or "causes of action" requesting the relief described immediately above.  [Id. at 12-15]  U.S. Bank also requests that the Rogers be held personally

---

[3]  The parties have not specified which provision of 11 U.S.C. § 362 was invoked, but the Court notes that § 362(a)(3) provides that a voluntary petition for Chapter 11 bankruptcy "operates as a stay, applicable to all entities, of . . . any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate[.]"

[4]  See Jonathan P. Friedland, Commercial Bankr. Litig. § 2:2, 2:4 (2012) (stating that "adversary proceedings are analogous to independent civil actions, commenced within the confines of the debtor's bankruptcy case" and that "[a]n adversary proceeding, just like any federal civil lawsuit, is commenced by filing a complaint.").

liable for the debts and liabilities of the 1988 The Brisket House, Inc. [Id.] The Brisket House, Inc. filed an answer as did the Rogers. [Bankr. D.N.M. 11-01124-s Docs. 13 & 18]

On August 1, 2011, only three days after initiating the adversary proceeding, U.S. Bank filed the motion to withdraw presently before this Court. [D.N.M. 11-cv-679 Doc. 1] U.S. Bank filed an identical motion in the Bankruptcy Court within the adversary proceeding. [Bankr. D.N.M. 11-01124-s Doc. 3] In its motion to withdraw the reference, U.S. Bank asks this Court to withdraw the reference of the adversary proceeding because the "[a]dversary [p]roceeding exclusively concerns unresolved state law, corporate and real property issues." [D.N.M. 11-cv-679 Doc. 1 at 1] U.S. Bank concedes that withdrawal of reference is not mandatory under 11 U.S.C. § 157(a)(5) (2005), [Id. at 3] but claims that discretionary withdrawal is appropriate because it has demonstrated "cause." [Id. at 3-7]

The motion to withdraw is lacking in several crucial respects. U.S. Bank failed to specifically identify or expressly state the specific issue or issues it would have this Court certify to the New Mexico Supreme Court. The closest U.S. Bank comes to identifying any such issues is the general assertion that "property interests are created and defined by state law" and that this includes "what rights a state chartered corporation has pursuant to state law, and . . . what rights, if any, a corporation with a revoked charter has." [Id. at 5] Moreover, U.S. Bank has not specifically identified, aside from citing one New Mexico case, *In re Will of Coe*, 113 N.M. 355, 826 P.2d 576, what statutes or body of New Mexico law is implicated by the relief requested in its complaint. While U.S. Bank refers generally to the New Mexico Business Corporation Act in its complaint, that act is nowhere mentioned in the motion to withdraw reference.

7

The primary issues in the adversary proceeding appear to be whether the three parcels remain the property of the 1988 The Brisket House, Inc. and remain subject to the interests of the creditors of the 1988 The Brisket House, Inc. or whether the Rogers successfully transferred the parcels to The Brisket House, Inc. incorporated in 2011.  Resolution of these issues would entail resolution of other questions such as whether a corporation with a revoked charter can be revived.  Yet, U.S. Bank neither identifies nor discusses New Mexico law bearing on these subjects nor provides the Court any indication, apart from unsupported and conclusory statements, as to whether resolution of these issues involve unsettled New Mexico law.  The Court observes that Defendant expressly contests U.S. Bank's claim that the adversary proceeding implicates unsettled New Mexico law and asserts that "even though there may not be a case exactly on point, it does not mean that the Bankruptcy Court cannot look at statutory and common law and apply the facts to the present case." [11-cv-679 Doc. 2 at 7-8]  Finally, although U.S. Bank suggests that this Court should certify certain issues which it has failed to specify to the New Mexico Supreme Court, it has not devoted any discussion to the rules governing certification or existing precedent from this district discussing the circumstances under which this Court will certify a matter to the New Mexico Supreme Court.

Defendant filed a response to the motion to withdraw reference on August 15, 2011. [D.N.M. 11-cv-679 Doc. 2]  Therein, Defendant claims that withdrawal of the reference is not appropriate as "cause" does not exist to justify withdrawal.  [Id. at 4-8]  According to Defendant, "the moving party bears the burden to show cause" and U.S. Bank has failed to meet its burden. [Id. at 7]

In reply, U.S. Bank argues that withdrawal is appropriate as the adversary proceeding involves matters of state law. [Id. Doc. 3 at 5-7] Yet, it again fails to state exactly what the state law issues are, what state law (statutory or otherwise) is implicated by those issues, and whether any state case law exists on the subject. U.S. Bank concludes by briefly discussing *Stern v. Marshall*, 131 S.Ct. 2594 (2011) and calls into question, for the first time, the Bankruptcy Court's jurisdiction. [Id.] This appears to be the first time U.S. Bank raised the jurisdictional issue in any of the proceedings.

## II. DISCUSSION

The Court begins by identifying the legal standards governing withdrawal of reference. This discussion necessarily entails a discussion of bedrock principles of bankruptcy law.

### A. Legal Standards Governing Withdrawal of Reference

"Under 28 U.S.C. § 1334(a), bankruptcy jurisdiction is vested in the district court." 9 Collier on Bankruptcy ¶ 5011.01 (16th ed. 2011); *see also Gecker v. Marathon Financial Ins. Co., Inc., RRG*, 391 B.R. 613, 614 (N.D. Ill. 2008). Pursuant to 28 U.S.C. § 157(a), however, bankruptcy cases may be automatically referred to the Bankruptcy Court in the first instance. *See Gecker*, 391 B.R. at 614; *see also* 9 Collier on Bankruptcy ¶ 5011.01. The local rules of the United States District Court for the District of New Mexico and the local bankruptcy rules for the Bankruptcy Court provide for such referrals. *See* D.N.M.LR-Civ. 1.6(a) (stating that "[t]he local rules of the United States Bankruptcy Court for this District govern practice and procedure in all bankruptcy matters except appeals" and that "[e]very paper in a non-appeal matter is filed with the Clerk of the Bankruptcy Court."); NM LBR Addendum A (providing that "all cases

under Title 11 and all proceedings arising under Title 11 or arising in or related to a case under Title 11 are referred to the bankruptcy judges for the district to the extent permitted by law.").

Despite the fact that bankruptcy matters may be automatically referred to bankruptcy courts, the United States Supreme Court has made clear that bankruptcy courts "can fully adjudicate only those matters at the 'core of the federal bankruptcy power.'" *In re American Community Services, Inc.*, 86 B.R. 681, 684 (D. Utah 1988) (citing *Northern Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50(1982)).  Congress has enacted legislation clarifying what constitutes a "core" versus a "non-core" proceeding and has specified that bankruptcy courts may enter final orders and judgments only as to core proceedings.  *Id.* at 684-85.

Because bankruptcy matters may be automatically referred to bankruptcy courts and because bankruptcy courts have specific jurisdictional limits, Congress has provided statutory mechanisms to permit parties to seek withdrawal of matters referred to the bankruptcy courts. *See* 28 U.S.C. § 157(d).  "If a party believes that a particular case or proceeding should be heard by the district court, 28 U.S.C. § 157(d) provides the authority, under certain circumstances, for the district court to withdraw the reference of the case or proceeding."  9 Collier on Bankruptcy ¶ 5011.01; *see also Gecker*, 391 B.R. at 614.  Section 157(d) provides that

> [t]he district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown.  The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d).  By its terms, Section 157(d) provides for both permissive (or what is often referred to as discretionary) withdrawal, and mandatory withdrawal.  9 Collier on Bankruptcy ¶ 5011.01[1][b][i]&[ii].  The parties here agree that mandatory withdrawal is not required and that

the sole issue is whether U.S. Bank has demonstrated that permissive withdrawal is warranted. [11-cv-679 Doc. 1 at 3, Doc. 2 at 4]  There are both substantive and procedural requirements a movant must satisfy to demonstrate that permissive withdrawal is justified.  The Court discusses these requirements in turn.

"Section 157(d) provides for discretionary withdrawal of reference upon a showing of cause."  9 Collier on Bankruptcy ¶ 5011.01[1][b][i].

> Congress did not define 'for cause shown,' but the courts consistently have held that the phrase encompasses a wide range of factors, including whether the claim or proceeding is core or non-core, considerations of judicial economy, convenience, the particular court's knowledge of the facts, promoting the uniformity and efficiency of bankruptcy administration, reduction of forum shopping and confusion, conservation of debtor and creditor resources, and whether the parties requested a jury trial.

*Gecker*, 391 B.R. at 615.  While courts should consider each of these factors as well as any other relevant considerations, 9 Collier on Bankruptcy ¶ 5011.01[1][b][i], courts and commentators agree that the primary consideration in determining whether "cause" exists to justify discretionary withdrawal is whether the proceeding is core or non-core.  *See In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d. Cir. 1993) ("A district court considering whether to withdraw the reference should first evaluate whether the claim is core or non-core, since it is upon this issue that questions of efficiency and uniformity will turn."); 9 Collier on Bankruptcy ¶ 5011.01[1][b][i] ("In determining whether cause exists for permissive withdrawal, the court first examines whether the matter is core or non-core.  Failure to address this distinction has been held to constitute a failure of cause.").

The burden rests on the party seeking withdrawal of reference to demonstrate that cause exists and withdrawal is warranted.  *Gecker*, 391 B.R. at 614-15.  The burden the moving party

11

bears is significant; "district courts have generally not been receptive to motions to withdraw the reference." 1 Collier Bankruptcy Manual ¶ 3.04[1][b] (4th ed. 2011).  Even where cause exists, "there is no mandate that the reference must be withdrawn.  By using the permissive 'may,' Congress has made it clear that withdrawal, pursuant to the first sentence of section 157(d), is discretionary." *Id.*  This is because "Congress intended bankruptcy proceedings to be adjudicated by bankruptcy courts unless rebutted by the existence of some other contravening policy which requires withdrawal of a reference in order to preserve a more significant interest." 9 Am. Jur. 2d Bankruptcy § 738 (2012).  As one court explained, "[a] district court has broad discretion in determining whether to withdraw a reference based on cause, but permissive withdrawal is the exception, rather than the rule.  Application of the ordinary rule prevents withdrawal of the reference from becoming an escape hatch from bankruptcy to district court." *Gecker*, 391 B.R. at 614-15 (internal quotation marks and citation omitted).  "Ultimately, the decision whether to withdraw reference is within the sound discretion of the court and is performed on a case by case basis."  Commercial Bankr. Litig. § 3:25.

"The procedure for withdrawing the reference is contained in [Fed.R.Bankr.P.] 5011." 1 Collier Bankruptcy Manual ¶ 30.4[1][a].  "Under rule 5011 of the Federal Rules of Bankruptcy Procedure, a district judge shall hear a motion for withdrawal of a case or proceeding and the relief that the district judge grants pursuant to a filed motion for withdrawal shall be on such terms and conditions as the judge deems proper." *Jane Doe v. Isaac S. Martinez, et. al.*, No. Cv 10-454 JB/WDS Doc. 6 at 3 (D.N.M. 2010) (citing Fed.R.Bankr.P. 5011(c).

With this guidance, the Court evaluates whether U.S. Bank has shown that the identified factors and any other relevant considerations weigh in favor of withdrawal.  The Court notes at

the outset that U.S. Bank, although it identified the relevant factors, did not sufficiently address them.

**B. Application of the Relevant Factors**

The Court begins with the inquiry of whether the adversary proceeding which U.S. Bank seeks to have withdrawn is a core or non-core proceeding.  As described below, U.S. Bank asserts that the adversary proceeding is non-core whereas Defendant takes the opposite view.

**1. Core Versus Non-Core**

"Section 157(b)(2), while not defining 'core proceeding,' provides a non-exhaustive list of core proceedings.  They are all matters that would have no existence in law apart from the Bankruptcy Code." Lawrence R. Ahern & Nancy Fraas MacLean, Bankr. Proc. Manual § 9033:3 (2012). "The non-exhaustive list of core proceedings . . . includes: 'matters concerning administration of the estate, proceedings to ... recover fraudulent conveyances, and other proceedings affecting . . . the adjustment of the debtor-creditor . . . relationship." *Cent. Vt. Pub. Serv. Corp. v. Herbert*, 341 F.3d 186, 191 (2d. Cir. 2003) (internal quotation marks and citation omitted).  "It is said that a proceeding is core under section 157 if it invokes a substantive right provided by Title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." Bankr. Proc. Manual § 9033:3 (internal quotation marks and citation omitted).

The adversary proceeding at issue here involves U.S. Bank's varying requests for declaratory judgment.  As outlined above, U.S. Bank specifically seeks a declaration that the 1988 The Brisket House, Inc. owns the three parcels; that the 2011 The Brisket House, Inc. holds no interest in the parcels; that the 1988 The Brisket House, Inc. is a separate entity from the 2011

13

The Brisket House, Inc.; that the Rogers' attempt to convey the parcels to the 2011 The Brisket House, Inc. are null and void; and that the Rogers are personally liable for the debts and liabilities of the 1988 corporation. [11-01124-s Doc. 1 at 12-15] It appears that one purpose, if not the primary purpose, of the relief sought in U.S. Bank's complaint is a determination that the three parcels are not the property of the bankruptcy estate of The Brisket House, Inc. incorporated in 2011. U.S. Bank expressly acknowledges as much and states that the determination of the matters in the adversary proceeding "have a direct bearing and affect on the administration of the [Brisket House, Inc.'s] estate" and further point out that the Bankruptcy Court appears to have recognized this fact as well. [D.N.M. 11-cv-679 Doc. 3 at 6 ¶ E] Viewed in this manner, the adversary proceeding could appear to be a core proceeding; however, this is a matter that this Court does not now decide.

11 U.S.C. § 541(a)(1) (2010) "of the Bankruptcy Code defines 'property of the estate' and provides that the estate includes 'all legal or equitable interests of the debtor in property as of the commencement of the case.'" *In re Reliance Group Holdings, Inc.*, 273 B.R. 374, 395 (Bankr. E.D. Pa. 2002) (citing § 541(a)(1)). "Various courts have concluded that matters requiring a declaration of whether certain property comes within § 541's definition of 'property of the estate' are core proceedings." *Id.*; *see also In re Continental Airlines*, 138 B.R. 442, 445 (D.Del. 1992) ("The authority of bankruptcy courts to determine the property of the estate is clear. . . . The determination of each party's interest in the property is made by reference to the applicable state's law, and the Bankruptcy Code determines whether that particular interest may properly be included in the property of the estate. The determination of the property of the estate is one of the core proceedings arising under title 11."). "[B]ankruptcy courts are not precluded

14

from adjudicating state-law claims [as core proceedings] when such claims are at the heart of the administration of the bankruptcy estate." *Cent. Vt. Pub. Serv. Corp.*, 341 F.3d at 191. "Bankruptcy Courts apply state law or any other relevant authority in making determinations of what is estate property." *In re Schraiber*, 97 B.R. 937, 940 (Bankr. N.D. Ill. 1989). "Indeed, analysis of state law issues to decide cases . . . is an integral part of the daily work of the Bankruptcy Court." *Id.* at 940.

Without citation to authority or clear explanation in its motion, U.S. Bank argues that the adversary proceeding is not a core matter because "the issues in the adversary proceeding do not fit within the language of core proceedings defined by 11 U.S.C. § 157(b)." [D.N.M. 11-cv-679 Doc. 3 at 5] This contention is unpersuasive. The specifically enumerated categories of core proceedings provided in § 157(b) are not exhaustive; "other proceedings not included in the list have been found to be 'core proceedings.'" 1 Collier Bankruptcy Manual ¶ 3.02[3]. Defendant states in its response, also without citation to authority or clear explanation, that "the matters for which the reference is sought to be withdrawn are core proceedings." [D.N.M. 11-cv-679 Doc. 2 at 7] In its reply, U.S. Bank reasserts its position that the adversary proceeding involves non-core matters and, for the first time, calls into question the Bankruptcy Court's jurisdiction. [Id. Doc. 3 at 5-7] Defendant did not have an opportunity to respond to U.S. Bank's assertion regarding the Bankruptcy Court's jurisdiction as the issue was first raised in U.S. Bank's reply to Defendant's response to the motion for withdrawal.

What is most critical here is that the Bankruptcy Court did not have the opportunity to address whether the adversary proceeding involves core or non-core matters. This is because the complaint initiating the adversary proceeding was filed on Friday, July 29, 2011 and the motion

to withdraw reference was filed in this Court on Monday August 1, 2011.  "It is the bankruptcy

court which in the first instance determines whether a proceeding is core or noncore."  *Matter of*

*Astroline Communications Co. Ltd. Partnership*, 161 B.R. 874, 877-78 (Bkrtcy. D. Conn. 1993).

        28 U.S.C. § 157(b)(3) provides that "[t]he bankruptcy judge shall determine, on the

judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding

under this subsection or is a proceeding that is otherwise related to a case under title 11."  Courts

and commentators alike have recognized that "[i]t is a critical and mandatory duty of the

bankruptcy judge to determine the nature of an adversary proceeding pursuant to 28 U.S.C. §

157(b)(3)."  *In re Marill Alarm Systems, Inc.*, 81 B.R. 119, 122 (S.D. Fla. 1987); *see also* 8A

CJS Bankruptcy § 164 (2011) (same).  At least two district courts have concluded, citing sound

policy reasons, that a motion to withdraw reference is premature and must be denied when it is

filed before a bankruptcy court has had occasion to rule on whether the proceedings for which

withdrawal is sought are core or non-core.  *See In re Pied Piper Casuals*, Inc., 48 B.R. 294, 294-

95 (S.D. N.Y. 1985) (observing that granting withdrawal of reference prior to a determination by

the bankruptcy court as to whether the proceedings are core or non-core would "be inconsistent

with the policy of having bankruptcy cases initially considered by a judge with expertise in

bankruptcy law."); *In re Ellwood City Iron & Wire Co.*, 51 B.R. 222, 223 (D.C. Pa. 1985)

(observing that 28 U.S.C. § 157 grants express authority to the bankruptcy judge to determine

whether a proceeding is core or non-core and stating that "[i]t would be unseemly for this Court

to usurp and exercise discretion in a matter that had been statutorily entrusted to the bankruptcy

judge.").  It is also well established that Bankruptcy Court's "have the power to determine their

own jurisdiction" and that this "is the gist of [S]ection 157(b)(3)."  1 Collier Bankruptcy Manual

¶ 3.02[6][a]; *see also Central Nat. Bank v. Kwak*, 49 B.R. 337, 340 (D.C. Ohio 1985) ("any claim that this is a non-core proceeding over which the bankruptcy court lacks jurisdiction must be made initially before that court, under § 157(b)(3)."). The import of these authorities is evident.

U.S. Bank's claim that the Bankruptcy Court lacks jurisdiction is unavailing; the foregoing cited authorities make clear that the jurisdictional issue should be brought first in the Bankruptcy Court. The fact that the Bankruptcy Court did not, and was precluded from, addressing whether the adversary proceeding initiated by U.S. Bank is core or non-core weighs heavily against granting withdrawal. Other factors weigh in the same direction.

**2. Whether Certification is Appropriate**

U.S. Bank seeks withdrawal so that this Court may certify certain unspecified issues to the New Mexico Supreme Court. As such, the Court's assessment of whether certification is appropriate is a relevant consideration in deciding whether withdrawal is warranted. As noted, neither U.S. Bank nor Defendant have discussed the law governing certification. As explained below, certification is not appropriate.

The New Mexico Uniform Certification of Questions of Law Act, NMSA 1978, § 39-7-1 to -13 (1997), governs whether and under what circumstances the New Mexico Supreme Court will accept certification of a question of law. The Act provides, in pertinent part, that

> [t]he supreme court of this state may answer a question of law certified to it by a
> court of the United States . . . if the answer may be determinative of an issue in
> pending litigation in the certifying court and there is no controlling appellate
> decision, constitutional provision or statute of this state.

*Id.* The New Mexico Rules of Appellate Procedure provide further guidance on the specific procedural rules regarding certification. Rule 12-607(C) NMRA states the following:

> A certification order must contain:
> (1) the names and addresses of counsel of record and parties appearing without counsel;
> (2) the question of law to be answered;
> (3) the facts relevant to the question, showing fully the nature of the controversy out of which the question arose.  If the parties cannot agree on a statement of facts, the certifying court shall determine the relevant facts and state them as part of its certification order; and
> (4) a statement acknowledging that the Supreme Court may reformulate the question.

Courts in this district have previously examined these rules and clarified the circumstances under which certification is appropriate.

"The decision to certify a question of state law to the state supreme court is within the sound discretion of the federal district court." *Bonham v. Indemnity Ins. Co. of North America*, 507 F.Supp.2d 1196, 1207 (D.N.M. 2007).  "In determining whether certification is appropriate, federal courts should consider whether the legal issue is novel and the applicable state law unsettled.  A mere difficulty in determining local law, while necessary, does not compel certification." *Id.* (citation omitted).

> That the cited authorities may be distinguishable because the facts of th[e] case do not exactly mirror those in any one case does not compel certification.  As the United States Supreme Court has stated, [n]ovel, unsettled questions of state law, however, not unique circumstances, are necessary before federal courts may avail themselves of state certification procedures.

*Id.* (second alteration in original) (internal quotation marks and citation omitted).  In addition, certification is not appropriate unless the facts underlying the matter to be certified are sufficiently developed and determined. *Hartford Ins. Co. of the Midwest v. Cline*, 367 F.Supp.2d 1342, 1345 (D.N.M. 2005).

> [A]n order of certification must contain, the facts relevant to the question, showing fully the nature of the controversy out of which the question arose . . . .
> The intent of the certification of facts and the determinative answer requirements

18

> is that [the New Mexico Supreme Court] avoid rendering advisory opinions.  The submitted facts must be sufficiently nonhypothetical and evidentiary.

*Id.*  These standards apply to the present case.

U.S. Bank has not provided any clarification as to whether the issues in the adversary proceeding involve novel questions relating to unsettled state law.  Indeed, U.S. Bank has not even identified the specific issue or issues implicated by the relief sought in its complaint and, aside from one case,  failed to identify or discuss the body of law implicated by its complaint.  Courts in this district have previously denied requests for certification even where the party requesting certification has identified the issue and cited significant authority on the matter.  *See Bonham*, 507 F. Supp.2d at 1207-08 (concluding that certification of the plaintiff's claims would be inappropriate because, despite citation to considerable authority, the plaintiff failed to identify any issues implicating either unsettled or novel aspects of New Mexico law).  This Court is not inclined to grant a request for certification where the party seeking certification failed to identify the issue or issues and failed to identify or discuss relevant legal authority.

In addition, there has not been sufficient development of the factual record to warrant certification.  As previously noted, the parties have not fully illuminated the facts underlying this matter.  The Court cannot credit U.S. Banks' claim that Defendant has acknowledged "virtually all of the factual allegations asserted by [U.S. Bank, and] they are virtually admitted." [11-cv-679 Doc. 3 at 3 ¶ 2]  The Court finds no such concession in Defendant's response and it is unclear what U.S. Bank means when it suggests the facts are "virtually admitted."  Moreover, Defendants Rogers failed to submit a response despite being named as Defendants and the Court is unable to ascertain whether they agree to the factual assertions represented by U.S. Bank or The Brisket House, Inc.  The parties' cursory treatment of the complex facts and procedural

history of this case precludes the Court from reaching any determination as to whether the parties agree on any of the facts. The Court's recitation of facts in the background section of this order are themselves derived largely from pleadings and not records or other evidence. It is possible that further proceedings in Bankruptcy Court may reveal that the parties have significantly different views of the underlying facts. The opposite is, of course, also possible. In either case, the request for certification is premature.

In sum, the Court concludes that certification is not appropriate at this time. This conclusion is a relevant consideration in this Court's assessment of whether discretionary withdrawal is warranted. U.S. Bank seeks withdrawal in order to have this Court certify unspecified issues to the New Mexico Supreme Court. As certification is not appropriate at this time, withdrawal is not warranted.

**3. Other Considerations**

The foregoing determinations—that the motion to withdraw is premature because it was filed prior to a ruling by the Bankruptcy Court on whether the adversary proceeding involves core or non-core matters, and that withdrawal is not warranted because certification likewise is premature—leads the Court to conclude that judicial economy, convenience, and the promotion of uniformity and efficiency of bankruptcy administration is best served by allowing the Bankruptcy Court to continue to preside over the adversary proceeding.

Any issues relating to the Bankruptcy Court's jurisdiction should be addressed first in the Bankruptcy Court. 1 Collier Bankruptcy Manual ¶ 3.02[6][a]; *Central Nat. Bank*, 49 B.R. at 340. Whether the adversary proceeding implicates core or non-core matters should also be addressed, in the first instance, by the Bankruptcy Court. 28 U.S.C. § 157(b)(3). The Court

observes that the New Mexico Uniform Certification of Questions of Law Act provides that any "court of the United States" may certify a question to the New Mexico Supreme Court.  NMSA 1978, Section 39-7-4.  The Bankruptcy Court is a court of the United States.  Thus, this Court's determination that certification is not appropriate at this juncture does not preclude the parties from revisiting this issue with the Bankruptcy Court.

## III.  CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff U.S. Bank's *Motion to Withdraw the Reference Pursuant to 28 U.S.C. §§ 157(d) and Certify to the New Mexico Supreme Court* [11-cv-679 Doc. 1] is DENIED, without prejudice.

**SO ORDERED**, this 30th day of March, 2012, in Albuquerque, New Mexico.

M. CHRISTINA ARMIJO
UNITED STATES DISTRICT JUDGE